The indictment charged the appellant and Mickey Kelly with the possession of marihuana contrary to law. The jury found the appellant "guilty of possession of marihuana for his own use," and fixed punishment at 12 months imprisonment in the county jail. The verdict also assessed a $1,000 fine. The trial court entered judgment setting sentence in accordance with this verdict. *Page 862 
This case arose from an investigation on June 25, 1975, by ABC Agents Bobby Davis and Charles Blount together with Dothan Police Sergeant J.R. McCord of a field in which marihuana was growing situated in Houston County, Alabama. Each of these officers testified that the location of the field was to the rear of a house trailer in which Mickey Kelly and his wife and child lived. This area was described as being on Route 4 in the direction of the "two TV stations" on the Columbia Highway in Houston County, Alabama.
The ABC officers testified that they were dropped off by the Dothan officer and walked along a railroad track through a corn field to a location where they had a full view of the field in which the marihuana plants were growing. Some of the plants were only a few inches high and some of the others were as much as three feet in height. They testified that they set up an observation of the field in question about 4 o'clock in the afternoon. They testified that they observed the appellant Johnny Eugene Fields and Mickey Kelly walk from the direction of the house trailer to the field and then "began working the plants."
From Agent Davis's testimony:
 "Q Where was it, with reference to the marijuana plants, that you saw this defendant?
 "A We saw him at the trailer, coming from the trailer to the plants; we saw him watering and working the plants; and also saw him putting some potting soil and watering some styrofoam cups that they had brought out there.
 "Q After you made this observation, what did you and the other officer do?
 "A As they started leaving, we radioed the other two officers, which was in a car, and then we proceeded to follow them. We crossed over into the woods and followed them on up behind the trailer, as the other two officers got to the trailer.
"Q And at that point, did you arrest them?
"A I didn't, but someone in the crowd did.
"Q How many officers were there?
"A Four.
 "Q Immediately after you arrested them, did you and anybody else there with you go back to where these plants were growing?
"A Yes, sir, I did.
 "Q And when you got there, did you make any measurements, count any — make a count of any of the number of plants, and take an inventory of what was there?
"A Yes, sir.
"Q All right. Tell the jury what you found?
 "A We found eleven plants, approximately three foot tall; eighteen plants, approximately a foot tall; eight plants approximately six inches tall; and 117 pots with some type seed in it.
 "Q Did you see this defendant do anything with any of those plants that you have just told the jury about?
"A Yes, sir.
 "Q All right. Will you tell the jury in some detail what you saw this defendant do with each article or plant?
 "A As the defendant and Mickey Kelly arrived, they brought something in a sack with them. They watered some of the bigger plants, and one or two of the smaller plants; dug around one or two of the larger plants; and then they took some little white styrofoam cups, put potting material in it, and appeared to plant something in it, and then watered it and left.
 "Q Do you have a judgment or opinion as to what period of time elapsed while *Page 863 
the defendant and this other man, Kelly, were there working on these plants?
"A I would say approximately 15 minutes. 10 to 15."
Each officer testified that the field in which the marihuana plants were growing was about 35 to 40 feet from the rear of house trailer in which Kelly lived.
Dothan Police Sergeant J.R. McCord testified he was working with ABC Agents Lamar Hedden, Charles Blount and Bobby Davis in the investigation of the marihuana field in question on June 25, 1975. He testified he drove to the house trailer belonging to Kelly and observed the appellant in possession of some green marihuana plants which he put in the police vehicle. He testified that he took a large box which contained the styrofoam cups and that there were a total of 117 plants. He testified that this material was turned over to Melinda Long at the Enterprise State Toxicology Crime Lab.
Melinda Long testified that she received the marihuana plants which she examined from Dothan Officer J.R. McCord and ABC Agent Bobby Davis. She stated that the large box which was brought to her contained "117 styrofoam plastic cups which were filled with potting soil and little small plants," that these plants were "marijuana" and that the total weight of the marihuana plants was 169.5 grams or approximately six ounces. Agent Davis and Sgt. McCord's testimony was corroborated by ABC Agent Charles Blount.
He testified as to the number of plants in the field as follows:
 "A There were 11 marijuana plants about three feet tall growing. There were 18 about a foot tall, 8 about six inches tall, and 117 styrofoam cups with potting soil and seeds planted in them."
Officer Blount further testified that in his opinion between 300 and 400 cigarettes could be made from "6 ounces of marijuana."
With reference to the appellant's activity at the field in question on cross-examination Agent Blount testified:
 "Q And you didn't see this man actually working the plants, did you? You saw him bending over, but you didn't know what he was doing, did you? You know that, because you went back out later and saw that a plant had been worked, is that right?
 "A They were both out there bent over working around the plants.
 "Q They were bent over? You saw them bent over, didn't you?
"A Yes, sir.
 "Q But anything else, you didn't see until you went back out later, did you?
"A I don't understand what you are trying to say.
 "Q What I am saying is that you saw them bent over, and you presumed that he was working on the plants, didn't you, Mr. Blount?
"A No, I don't presume. He was working on them.
"Q You saw him actually working?
"A Yes.
"Q What did you see him doing?
 "A He was messing with that potting soil and those cups and things there; and they were just generally milling around and working with the plants, watering them and putting stuff around them.
 "Q Did you go back to the trailer after they went back to the trailer?
 "A When they left the plants, and started back towards the trailer, we —
"Q Took off after them?
 "A — left after them, and we caught them about the corner of the trailer and placed them under arrest. *Page 864 
 "Q Okay. And what Mr. Fields was arrested for was what he was doing around the plants that you have just testified to, isn't it?
"A Yes, sir.
 "Q Now, ya'll found some marijuana in the trailer, didn't you?
"A Yes, sir.
"Q Okay. He is not being charged with that, is he?
"A No, sir.
 "Q In other words, he is being charged with the possession of these plants that you saw growing out behind Mr. Kelly's house, is that right?
"A Yes, sir."
The appellant presented the testimony of his co-defendant Mickey Kelly. Mr. Kelly testified that he lived in the house trailer in question at Route 4, in Houston County, with his wife and baby. He testified that Gene Fields lived with his mother on Third or Fourth Avenue in Dothan and that no one else lived at his home but his own family. He testified that Fields had come by his home that afternoon and that they had ridden down to the K-Mart to get some watermelon seeds and a coke. He testified that they then returned to his house trailer and walked out back as he told Fields he wanted to show him where he was planting some seeds. He testified that he told the appellant that they were marijuana plants and that he personally watered the plants but that the appellant did not do any watering or working with the plants while they were at the field on the afternoon of June 25, 1975. He testified that after a few minutes they walked back to his trailer house where both of them were arrested for possession of marihuana.
 I
The sole issue presented by this record is whether or not sufficient evidence was presented at trial of the appellant's "possession of the prohibited substance, in order to sustain the verdict and judgment."
Knowledge of the presence of the prohibited substance may be established by circumstantial evidence, and guilt does not depend on ownership. Parks v. State, 46 Ala. App. 722,248 So.2d 761; Daniels v. State, 49 Ala. App. 654, 275 So.2d 169.
The offense of possession of illegal drugs is susceptible of joint commission. Green v. State, 30 Ala. App. 94, 2 So.2d 324;Parks v. State, supra.
While it is true that the mere presence at the scene of a crime without more, does not make an accused a party to such crime, nevertheless, when the presence of the accused at the scene is established and the evidence of his knowledge of the presence of the prohibited substance is shown, along with any other incriminating evidence, then the issue of the appellant's guilt should be submitted to the jury. Radke v. State, 292 Ala. 290, 293 So.2d 314.
We are of the opinion that the State here presented a prima facie case and the trial court therefore properly submitted this cause to the jury.
After careful examination we find this record free of error. The judgment is therefore
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur. *Page 865