[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 983 
Jayne King Moore was indicted for violation of the Alabama Uniform Controlled Substances Act, § 20-2-1, et seq., Code of Alabama 1975. In the first count of the three-count indictment, appellant was charged with the unlawful possession of cocaine. The second count of the indictment charged the appellant with the unlawful possession of Diazepam, and the third count charged her with the unlawful possession of marijuana. The jury found the appellant "guilty as charged in the indictment" and after a sentencing hearing she was sentenced to ten years' imprisonment. *Page 984 
On the afternoon of July 21, 1982, members of the Montgomery City Police Department, the Montgomery County Sheriff's Department, the District Attorney's office, and the Alabama Bureau of Investigation executed a search warrant for a mobile home and outbuildings in Lapine, Alabama. The search warrant was the result of an undercover operation which was being carried on in Montgomery County. The mobile home and out-buildings were allegedly owned by Tim and Jayne Moore.
Officer Dennis Bodine of the Montgomery Police Department testified that, upon arrival at the residence of Tim and Jayne Moore, he observed the appellant and her husband working on a fence near their mobile home. He stated that a flatbed truck was parked near the fence, where the appellant and her husband were standing. He stated that, as the officers entered the property of the appellant, she jumped on a ten speed bicycle and began heading towards the mobile home. He also stated that the appellant's husband started running towards the residence. He stated that the appellant and her husband were stopped before they reached the residence and placed in custody.
Officer Bodine testified that police officers and other law enforcement officials then executed the search warrant. He stated that entry was made into the residence and a large amount of illegal drugs and paraphenalia were found in the mobile home. He stated that several bags of marijuana were found in a brown box on the kitchen counter and he identified such items. He further identified a large number of other items found in the home and outbuildings. Such items were (1) a plastic bag containing white tablets, found in the front bedroom of the home; (2) two plastic bags of white powder, found in the front bedroom of the home; (3) two more plastic bags containing white tablets, found in the front bedroom on a counter top; (4) a plastic bag containing a brown substance, found in the front bedroom on a counter top; (5) a small green box containing marijuana and a white powder, found in the bedroom; (6) a small piece of tin foil with a brown substance wrapped inside, found in closet of bedroom; (7) a bottle of Lactose, found on the counter top in the front bedroom; (8) a small blue dispenser with a white powder inside, found on the front seat of the flatbed truck; and (9) a plastic bag with marijuana in it, found in an outbuilding. He stated that he kept each of these items in his control until he turned them over to Allen Adair at the State Department of Forensic Sciences. He stated that these items were tested and returned to him, where they were placed in the drug evidence room of the Montgomery Police Department.
Officer Bodine further testified that a number of other items were found during the search. Such items were (1) a set of counter weights for a scale, found in front bedroom; (2) a brown vinyl carrying case with a set of scales, found on bathroom counter; (3) a blue porcelain water pipe, with a residue in it, found in the closet of front bedroom; (4) a magazine with an article on growing marijuana in it, a Xerox copy of a book entitled "Drug Manufacturing for Fun and Profit," a pamphlet entitled "The Marijuana Consumers and Dealers Guide", a book entitled the "Cocaine Handbook," and a "Fall Harvest Guide," all found in a desk in the living room of the home; (5) a field testing kit; (6) a locker containing laboratory glassware which had residue in it, found in an outbuilding; and (7) a box containing a book entitled "Marijuana Grower's Guide," a glass jar with residue inside, a "Deering" sifter used for mixing cocaine, found in the front bedroom.
He stated on cross-examination, when questioned as to why he believed the mobile home to be a residence, that there were clothes in the closets, there were food items in the cabinets and deep freeze.
Allen Adair testified that he was employed as a toxicologist with the State Department of Forensic Sciences. He stated that he did an analysis on a number of items turned over to him by Officer Dennis Bodine. He stated that he tested six plastic bags containing plant material, which *Page 985 
were located in a brown box. He stated that these contained marijuana. He stated that he tested a white powder found in a plastic bag and that such powder was Dextrose — a cutting agent for various drugs. He stated that he tested a plant material in a big glass jar and it was marijuana. He stated that he tested 508 white tablets and these tablets were identified as Diazepam — a tranquilizer drug. He stated that he tested two plastic bags containing a white powder and this powder was cocaine. He stated that he tested several more clear plastic bags containing white tablets and these tablets were Diazepam.
Mr. Adair further testified that he tested a brown jar containing a white powder and this powder was Lactose — a growth sugar. He tested a plastic bag containing a brown substance and this substance was identified as hashish. He stated that he tested a plant material and a white powder located in a green box and these substances were identified as marijuana and cocaine. He stated that he tested a brown substance found wrapped in a small piece of tin foil and this substance was hashish. He tested a blue container which had a white powder in it and this powder was cocaine. He tested a green plant material found in a clear plastic bag and this material was marijuana. He also tested two more bags which contained plant material and this was identified as marijuana.
W.J. Walker testified that he was employed by the Montgomery County Sheriff's Department and that he was present when the search was conducted on July 21, 1982. He stated that he found a brown box on the kitchen counter which contained a number of bags with a plant material in them. He stated that he turned this evidence over to Officer Bodine. He further stated that he had been informed that the mobile home was the residence of Tim and Jayne Moore.
On cross-examination, he stated that he observed women's clothing in the closet of a bedroom in the mobile home.
William Rhegness testified that he was a narcotics agent employed by the Alabama Bureau of Investigation. He stated that he was involved in the search of the appellant's residence on July 21, 1982. He stated that he recovered a small piece of tin foil, which had a brown substance inside it, from a shelf in a closet in the front bedroom. He stated that he found a water pipe, designed for smoking marijuana or hashish, in the same place he discovered the tin foil. He stated that he turned both of these items over to Officer Bodine.
On cross-examination, he stated that the appellant admitted to him that she lived in the mobile home. He specifically stated that he "recall[ed] asking her name and if she lived there and she told me and affirmed yes she lived there."
B.G. Bryant testified that he was employed by the District Attorney's office. He stated that he was present during the search of the appellant's residence. He stated that previous to this search, during the course of his investigation, he looked in the Montgomery County phone book and observed that the Moore residence was listed at the address they ended up searching. He further stated that he participated in the search and recovered a blue container, which had a white powder in it, from the front seat of the flatbed truck. He stated that he turned this over to Officer Bodine.
N.W. Ward testified that he was employed by the Montgomery County Sheriff's Department. He stated that he participated in the search of appellant's residence and found a number of items which he turned over to Officer Bodine. Among the items he recovered from the front bedroom of the mobile home were (1) a book entitled "Marijuana Grower's Guide;" (2) a big glass jar which had marijuana in it; (3) a bag of pills; (4) a set of weights for a triple beam scale; (5) a plastic bag containing a white powder; (6) a bag of 452 pills which was in plain view on a counter top; (7) a bottle of Lactose on top of a counter; (8) a container with white powder in it. He also found a set of scales in the bathroom, on the counter top. He also searched a desk in the living room of the mobile home and found a number of drug related books. *Page 986 
Officer Ward further testified that he noticed a mailbox across the road from the driveway and this mailbox had the name "Moore" on it.
Ken Halford testified he was employed by the Alabama Bureau of Investigation and that he participated in the search of appellant's residence on July 21, 1982. He testified that he found women's lingerie in the mobile home. He also testified that he found a greenhouse setup in an eighteen-wheel trailer, which was located beside the mobile home. He further stated that one Bob Robertson — a suspect in the drug investigation — told him Tim and Jayne Moore lived in the mobile home.
The State rested its case at this point and the appellant moved for a judgment of acquittal and to exclude the State's evidence.
 I
The appellant contends that the trial court erred in overruling his motion to exclude because the State failed to prove a prima facie case.
In considering the question of whether the trial judge properly overruled that motion, we can only consider that evidence which was before the trial judge at the time the motion to exclude was made. Williams v. State, 340 So.2d 1144
(Ala.Crim.App. 1976), cert. denied, 340 So.2d 1149 (Ala. 1977).
For unlawful possession of a controlled substance, it is not necessary to prove manucaption, but constructive possession may be shown and, where such possession is relied upon, the State must also prove beyond a reasonable doubt that the accused knew of the presence of a prohibited substance. Riggins v. State,437 So.2d 631 (Ala.Crim.App. 1983); Jones v. State, 432 So.2d 5
(Ala.Crim.App. 1983); Yarbrough v. State, 405 So.2d 721
(Ala.Crim.App.), cert. denied, 405 So.2d 725 (Ala. 1981); Greenv. State, 384 So.2d 1215 (Ala.Crim.App. 1980); McHellen v.State, 351 So.2d 689 (Ala.Crim.App. 1977); Daniels v. State,49 Ala. App. 654, 275 So.2d 169 (1973). Guilty knowledge of the presence of the illegal substance may be established by circumstantial evidence. Jones v. State, supra; Yarbrough v.State, supra; Mitchell v. State, 395 So.2d 124 (Ala.Crim.App. 1980), cert. denied, 395 So.2d 127 (Ala. 1981); Green v. State, supra; McHellen v. State, supra; Henderson v. State,347 So.2d 540 (Ala.Crim.App.), writ quashed, 347 So.2d 543 (Ala. 1977);Parks v. State, 46 Ala. App. 722, 248 So.2d 761 (1971). Since the possession of illegal drugs is susceptible of joint commission, the guilt of the accused does not necessarily depend upon proof of her ownership of the drugs. Mitchell v.State, supra; McCord v. State, 373 So.2d 1242 (Ala.Crim.App. 1979); Henderson v. State, supra; Holley v. State,447 So.2d 829 (Ala.Crim.App. 1983).
"While mere proximity to contraband is not enough to establish constructive possession, where other circumstantial evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt on such charges." German v. State,429 So.2d 1138 (Ala.Crim.App. 1982); United States v. Whitmire,595 F.2d 1303 (5th Cir. 1979). When the presence of the accused at the scene is established and evidence of his knowledge of the presence of the illegal substance is shown — even by circumstantial evidence — along with any other incriminating evidence, the issue of the appellant's guilt should be submitted to the jury. Riggins v. State, 437 So.2d 631
(Ala.Crim.App. 1983); German v. State, supra; Collier v. State,413 So.2d 396 (Ala.Crim.App. 1981), affirmed, 413 So.2d 403
(Ala. 1982). Radke v. State, 292 Ala. 290, 293 So.2d 314
(1974). "If presence at the time and place a crime is committed, in conjunction with other facts and circumstances tend to connect the accused with the commission of the crime, then the jury may find the accused guilty." German v. State, supra; Dolvin v. State, 391 So.2d 133 (Ala. 1980).
In this case there is no argument with the proposition that where drugs are found on premises under control of the *Page 987 
appellant an inference may arise that the appellant had knowledge and possession of them. The particular difficulty in this case is whether there was sufficient evidence of the appellant's control of the premises to authorize an inference of her knowledge and constructive possession of the drugs found on those premises. The appellant argues that the evidence of control was insufficient because there was no evidence that she was ever physically present in the mobile home. A thorough review of the evidence in this case, and the authorities on this point, convinces us that this was a question for the jury in this case. "Where, as here, the presence of the accused at the scene is established by both direct and circumstantial evidence, and the evidence of the accused's knowledge of the presence of the prohibited substance is shown together with other incriminating evidence, the issue of the defendant's guilt should be submitted to the jury." Henderson v. State,347 So.2d 540 (Ala.Crim.App.), writ quashed, 347 So.2d 543 (Ala. 1977); Fields v. State, 333 So.2d 861 (Ala.Crim.App. 1976). Moreover, a showing that there is a reasonable probability of unlawful possession of narcotics by someone is sufficient to establish the corpus delicti of the crime of possession. It is not necessary to prove the accused's connection with the drugs to prove the corpus delicti. Laffitte v. State, 370 So.2d 1108
(Ala.Crim.App.), cert. denied, 370 So.2d 1111 (Ala. 1979);Reynolds v. State, 346 So.2d 979 (Ala.Crim.App.), cert. denied,346 So.2d 986 (Ala. 1977).
The appellant further argues that her admission of living at the trailer was in violation of her Miranda rights. This testimony was elicited by appellant's own counsel during cross-examination of Officer Rhegness and was not objected to during trial. As a result, such argument has not been preserved for our review. This court may only review rulings of the trial court which are adverse to the appellant. Moreover, error cannot be predicated upon admission of testimony which is elicited by defense counsel and is responsive to defense questions. Williams v. State, 383 So.2d 547 (Ala.Crim.App. 1979), affirmed, 383 So.2d 564 (Ala. 1980), cert. denied449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980).
A review of the evidence in this case reveals that the trial judge did not err in overruling the appellant's motion to exclude the State's evidence.
 II
The appellant contends that the trial court erred in allowing the prosecutor to proceed in a manner that was prejudicial to her.
In her brief the appellant notes a large number of instances where the prosecutor made comments or asked questions and she contends such questions and comments were prejudicial to her. She also argues that several comments made by the prosecutor during opening and closing statements were improper and prejudicial. It should be noted that appellant's trial counsel did not object to a number of the questions she claims were prejudicial and, while he did object to several other questions and comments, he did not invoke a ruling by the trial court. As regards appellant's complaint about improper closing argument, we have carefully examined such argument and find the appellant's contention to be without merit. While in argument to the jury, counsel may not argue as a fact that which is not in evidence, nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning. Sanders v. State,423 So.2d 348 (Ala.Crim.App. 1982); Speigner v. State, 369 So.2d 39
(Ala.Crim.App.), cert. denied, 369 So.2d 46 (Ala. 1979); Linerv. State, 350 So.2d 760 (Ala.Crim.App. 1977). The prosecutor, as does defense counsel, has a right to present his impressions from the evidence. Sanders v. State, supra; Hayes v. State,395 So.2d 127 (Ala.Crim.App. 1980), cert. denied, 395 So.2d 150
(Ala. 1981); McQueen v. State, 355 So.2d 407 (Ala.Crim.App. 1978). He may argue every legitimate inference and may examine, collate, shift and treat the evidence in his own *Page 988 
way. Sanders v. State, supra; Hayes v. State, supra; McQueen v.State, supra.
Furthermore, in this case appellant's counsel did not object to any of the statements relied on by appellant. "Generally, improper argument is not a valid ground for motion for a new trial, or subject to review on appeal, unless there is timely and specific objection by counsel or motion to exclude, an adverse ruling thereon by the trial court, or refusal of the trial court to make a ruling, and an objection thereto." Thomasv. State, 440 So.2d 1216 (Ala.Crim.App. 1983); Trawick v.State, 431 So.2d 574 (Ala.Crim.App. 1983); Lawson v. State,377 So.2d 1115 (Ala.Crim.App.), cert. denied, 377 So.2d 1121 (Ala. 1979).
We have carefully reviewed the questions and comments of the prosecutor during the trial of the case. As stated above, the complained of questions were not objected to at the trial level, or there was no ruling invoked by the appellant's counsel. Our review on appeal is limited to matters on which rulings have been invoked at trial court. Robinson v. State,441 So.2d 1045 (Ala.Crim.App. 1983); Cowgill v. State,426 So.2d 517 (Ala.Crim.App. 1982); Whorton v. State, 422 So.2d 812
(Ala.Crim.App. 1982); Wood v. State, 416 So.2d 794
(Ala.Crim.App. 1982); Parker v. State, 406 So.2d 1036
(Ala.Crim.App.), cert. denied, 406 So.2d 1041 (Ala. 1981). Moreover, in the absence of a ruling, a request for a ruling, or an objection to the court's failure to rule, there is nothing preserved for appellate review. Stewart v. State,398 So.2d 369 (Ala.Crim.App.), cert. denied, 398 So.2d 376 (Ala. 1981); Magro v. State, 384 So.2d 871 (Ala.Crim.App.), cert. denied, 384 So.2d 875 (Ala. 1980); Cook v. State,369 So.2d 1251 (Ala. 1979). The trial court did not err on this point.
 III
The appellant argues that the trial court erred in overruling her motion for a new trial and assigns several reasons therefor.
 A
She argues that the trial court erred in failing to exclude the items which were seized from the residence.
The Alabama Supreme Court has held that the admission of various items of drug "paraphernalia" is permissible in order for the State to show the complete story. Furthermore, evidence of other drugs and paraphernalia seized in the search of defendant's home, but not encompassed in the charge against the defendant, is admissible to show the whole story. Beasley v.State, 408 So.2d 173 (Ala.Crim.App. 1981), cert. denied,408 So.2d 180 (Ala. 1982); Casey v. State, 406 So.2d 1029
(Ala.Crim.App.), cert. denied, 406 So.2d 1036 (Ala. 1981); Batyv. State, 401 So.2d 308 (Ala.Crim.App. 1981); Reed v. State,401 So.2d 131 (Ala.Crim.App.), cert. denied, 401 So.2d 139
(Ala. 1981); Green v. State, supra; McHellen v. State, supra;Brantley v. State, 55 Ala. App. 493, 317 So.2d 337 (1974), reversed, 294 Ala. 344, 317 So.2d 345 (1975), on remand,55 Ala. App. 717, 317 So.2d 347, cert. denied, 294 Ala. 346,317 So.2d 348 (1975).
In this case the officers were searching under a valid search warrant and the execution of such warrant was proper. Under these circumstances the evidence seized was admissible as evidence of the crime for which the appellant was convicted. See Baty v. State, supra. Moreover, the State properly showed a complete chain of custody for each item seized and entered into evidence. See Sturdivant v. State, 439 So.2d 184 (Ala.Crim.App. 1983); Riggins v. State, 437 So.2d 631 (Ala.Crim.App. 1983);Luster v. State, 433 So.2d 481 (Ala.Crim.App. 1983); Congo v.State, 409 So.2d 475 (Ala.Crim.App. 1981), cert. denied,412 So.2d 276 (Ala. 1982); Holley v. State, 447 So.2d 829
(Ala.Crim.App. 1983).
 B
The appellant further argues that the trial court should have granted her a new trial because the jury returned a general verdict which did not refer to any *Page 989 
specific controlled substance for which she was charged with possessing. She was charged in a three count indictment with the possession of three separate drugs. It is the rule in Alabama that a general verdict of guilty on a multiple count indictment is valid where the evidence would sustain the verdict of guilty under one or more counts and the sentence imposed is no greater than could have been imposed on any one of the counts. In this case the evidence was sufficient to find a verdict of guilty on each count in the indictment. Furthermore, the appellant was sentenced well within the limits for the offense.
 C
The appellant also contends that the trial court should have conducted a perjury hearing as to a particular State's witness and failure to do so was error. She contends that she never made a statement to Officer Rhegness, or to anyone, about living in the mobile home.
In order to obtain a new trial on the basis of the use of perjured testimony by the State, a defendant must allege andprove (1) that the testimony was perjured; (2) that it was on a matter of such importance that the truth would have prevented a conviction; (3) that the State had knowledge that the testimony was perjured; and (4) that the defendant was not negligent in discovering the falsehood and in raising the issue. Waldrop v.State, 448 So.2d 490 (Ala.Crim.App. 1984); Phelps v. State,439 So.2d 727 (Ala.Crim.App. 1983); Pennington v. State,420 So.2d 845 (Ala.Crim.App. 1982); Barnes v. State, 415 So.2d 1217
(Ala.Crim.App. 1982); Summers v. State, 366 So.2d 336
(Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979). In the present case the appellant failed to satisfy this burden of proof. The trial court did not err in denying the motion for new trial on this point.
Moreover, a decision on a motion for new trial rests largely within the discretion of the trial court, and, in reviewing such decision, the appellate court will indulge every presumption in favor of the correctness thereof. Ward v. State,440 So.2d 1227 (Ala.Crim.App. 1983).
 IV
The appellant contends that the trial court erred in refusing several of her written requested charges. However, only one of these refused charges has been preserved for our review pursuant to Allen v. State, 414 So.2d 989 (Ala.Crim.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982). The appellant's contention that the trial court improperly refused the preserved written requested charge is without merit.
 "The refusal of a charge, though a correct statement of law, shall not be cause for a reversal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties."
Ala. Code § 12-16-13 (1975). See also Campbell v. State,423 So.2d 284 (Ala.Crim.App. 1982); Lambeth v. State, 380 So.2d 923
(Ala. 1979); Williams v. State, 451 So.2d 411 (Ala.Crim.App. 1984).
We have reviewed the refused charge and find that it was fully covered in the trial court's oral charge to the jury. Therefore, there is no basis of error to reversal on this issue.
 V
The appellant contends that the trial court's consideration of a pre-sentence report on her constituted a denial of due process because it consisted of "a pack of lies". She contends that the report contained false accusations and that her attorney challenged such report at the sentencing hearing. This court is bound by the record and not by allegations or arguments in brief reciting matters not disclosed by the record. Eaton v. State, 423 So.2d 352 (Ala.Crim.App. 1982);Harris v. State, 420 So.2d 812 (Ala.Crim.App. 1982); Hollins v.State, 415 So.2d 1249 (Ala.Crim.App. 1982). There is nothing in the record before us which supports the claim of the appellant. *Page 990 
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.